UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BRITTNEY J. WYNN,[1]                    )
                                        )
              Plaintiff,                )
                                        )
    v.                                  )        No.  4:23 CV 1264 CDP
                                        )
CAROLYN COLVIN, Acting                  )
Commissioner of Social Security,[2]     )
                                        )
              Defendant.                )

## MEMORANDUM AND ORDER

Plaintiff Brittney J. Wynn brings this action under 42 U.S.C. § 1383 seeking

judicial review of the Commissioner's final decision denying her claim for

supplemental security income (SSI) under Title XVI of the Social Security Act, 42

U.S.C. §§ 1381, *et seq.*  Because the Commissioner's final decision is not

supported by substantial evidence on the record as a whole, I will reverse the

decision and remand for further proceedings.

### Procedural History

Wynn applied for SSI on November 1, 2021, asserting that she became

---

[1] Although the caption of the Complaint spells plaintiff's first name as "Brittany" (*see* ECF 1), plaintiff's first name is spelled "Brittney" in the administrative record (including social security documents and medical records) and in the parties' subsequent filings in this case.  I will instruct the Clerk of Court to update the docket sheet to correctly identity plaintiff as "Brittney J. Wynn."

[2] Carolyn Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted as the proper party defendant in this action.

disabled on July 24, 2021, because of permanent nerve damage to her right arm and leg, bipolar disorder, anxiety, and post-traumatic stress disorder (PTSD).  The Social Security Administration (SSA) denied Wynn's application initially in January 2022 and on reconsideration in February 2022.  A hearing was held before an administrative law judge (ALJ) on September 13, 2022, at which Wynn and a vocational expert (VE) testified.  On October 12, 2022, the ALJ entered a decision denying Wynn's claim for benefits, finding that VE testimony supported a conclusion that Wynn could perform work that exists in significant numbers in the national economy.  The Appeals Council denied Wynn's request for review of the ALJ's decision on August 7, 2023.  The ALJ's October 2022 decision is thus the final decision of the Commissioner.

In this action for judicial review, Wynn contends that the ALJ committed legal error by considering reports from consultative examinations (CEs) that were not signed by the examiners, in violation of Social Security Regulations.  Wynn also argues that the ALJ's decision is not supported by substantial evidence on the record as a whole because the ALJ improperly evaluated the consistency of her subjective statements.  Wynn asks that I reverse the ALJ's decision and remand for further consideration.

**Medical Records and Other Evidence Before the ALJ**

On July 24, 2021, Wynn suffered several gunshot wounds to her right arm,

chest, legs, and buttocks.  After an eleven-day stay at the hospital where she underwent surgeries, physical therapy, and pain management, she was discharged home on August 4, 2021.  She applied for SSI benefits three months later.  She was 32 years old.  Two bullets remain lodged in Wynn's body – one in her right groin/labia area and one in her right buttock.  Surgery cannot be performed to remove those bullets because of their embedded location.  Surgery may be possible in the future if the bullets move toward the surface.

With respect to medical records and other evidence of record, I adopt Wynn's recitation of facts set forth in her Statement of Uncontroverted Material Facts (ECF 6-1) as admitted and clarified by the Commissioner (ECF 7-1).  These statements provide a fair and accurate description of the relevant record before the Court.  Additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A.   <u>Legal Standard</u>

To be eligible for benefits under the Social Security Act, Wynn must prove that she is disabled.  *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled.  *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether she has a severe impairment; and whether her severe impairment(s) meets or medically equals the severity of a listed impairment.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national

economy.  If so, the claimant is found not disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis.  If she meets this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational factors such as age, education, and work experience.  *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).  If the claimant has nonexertional limitations, the Commissioner may satisfy her burden at Step 5 through the testimony of a VE. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Jones*, 619 F.3d at 968. Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision.  *McNamara v. Astrue*, 590

F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision.  *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.   The ALJ's Decision

The ALJ determined that Wynn had not engaged in substantial gainful activity since the date of her SSI application.  The ALJ found that the residuals of Wynn's gunshot wounds and her PTSD and bipolar disorder were severe impairments, but that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 22-23.)  The ALJ found that Wynn had the RFC to perform sedentary work[3] but was limited to:

> no ladders, ropes, or scaffolds; no crawling, no overhead reaching with the dominant right arm, frequent handling and fingering and reaching in other directions with the dominant right arm.  Occasional balancing, kneeling, crouching, stooping, climbing ramps and stairs. No dangerous unprotected heights or dangerous unprotected moving machinery.  She can do simple, routine tasks with occasional social interaction with co-workers and supervisors, no direct interaction with the general public and the work environment must be non-public.

---

[3] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."  20 C.F.R. § 416.967(a).

(Tr. 25.)  The ALJ found that Wynn had no past relevant work.  (Tr. 31.)

Considering Wynn's RFC, age, education, and work experience, the ALJ determined that VE testimony supported a conclusion that Wynn could perform work as it exists in significant numbers in the national economy, and specifically as an addresser, sorter, and document preparer.  (Tr. 31.)  The ALJ thus found that Wynn was not under a disability from the time she filed her application.  (Tr. 32.)

C.    Consultative Examiners' Reports

As an initial matter, Wynn's claim that the CE reports were not signed by the examiners in violation of the Regulations is without merit.  In accordance with 20 C.F.R. § 416.919n(e), each report was signed by the respective medical source who performed the examination.  (*See* Tr. 940, 942, 947.)  The ALJ therefore did not commit legal error in considering those reports in making his determination.

D.    Consistency of Subjective Statements of Symptoms[4]

Wynn also claims that the ALJ erred in assessing the consistency of her subjective statements of symptoms when he failed to consider her complaint that she experiences pain with sitting and that she needs a cane to alleviate her pain and provide stability while walking and standing.  Wynn contends that proper

---

[4] In 2017, the Social Security Administration issued a new ruling that eliminated the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).  The factors to be considered in evaluating a claimant's statements, however, remain the same.  *See id*. at *13 ("Our regulations on evaluating symptoms are unchanged.").  *See also* 20 C.F.R. § 416.929.  This new ruling applies to the Commissioner's final decisions made on or after March 28, 2016.

evaluation of her subjective statements would have resulted in further limitations to her RFC that would preclude her ability to work.

A claimant's RFC is the most she can do despite her physical or mental limitations.  *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations.  *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.945(a).  Accordingly, when determining a claimant's RFC, the ALJ must evaluate the consistency of the claimant's subjective statements of symptoms with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

For purposes of social security analysis, a "symptom" is an individual's own description or statement of her physical or mental impairment(s).  SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).  If a claimant makes statements about the intensity, persistence, and limiting effects of her symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record.  *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the

ALJ must consider all evidence relating thereto, including what are familiarly known as "the *Polaski* factors," that is, the claimant's prior work record; daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). *See also* 20 C.F.R. § 416.929. If the ALJ finds that the statements are inconsistent with the evidence of record, he must make an express determination and detail specific reasons for the weight given the claimant's testimony. SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). While an ALJ must acknowledge and consider the *Polaski* factors, he need not discuss each one before discounting a claimant's subjective statements. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).

Here, after finding at Step 3 of the sequential analysis that Wynn's impairments did not meet the criteria for listing-level disability, the ALJ evaluated Wynn's statements of symptoms and assessed her RFC. The ALJ considered the *Polaski* factors and made specific findings that Wynn's claimed symptoms were inconsistent with the record. If those findings are supported by substantial evidence on the record as a whole, I must defer to the ALJ's determination. *Julin*

*v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

Regarding Wynn's claim that the ALJ failed to properly consider her complaints of pain with sitting, the ALJ noted that Wynn testified at the administrative hearing that she experiences pain with walking, standing, and lying down, and that she can sit in one position for about ten to fifteen minutes before needing to rotate her position.  (Tr. 26.)  Wynn testified that throughout the day, she sits in her chair and on the couch, and sits up in bed from time to time; and that she mostly leans to the left when she sits because of the location of the bullets. (Tr. 49.)  In her Adult Function Report dated November 18, 2021, Wynn described limitations with her arm and with standing and walking, but she did not report any sitting limitations.  (Tr. 202-09.)  Notably, in the Function Report's checklist of activities affected by her impairments, Wynn did not mark "sitting."  (Tr. 207.) Indeed, Wynn's only complaints involving her ability to sit came during her CEs in January 2022.  (Tr. 936-40, 944-47.)  As noted by the ALJ, however, Wynn needed no help getting on and off the examination table during her physical CE, and she had no difficulty rising from a chair.  (Tr. 27, 936-40.)  Finally, Wynn went to the emergency room in May 2022 with complaints of chest pain.  It was noted that she had no other complaints.  (Tr. 951.)

Although Wynn claims that the ALJ should have evaluated her complaints of pain related to sitting, there is no indication in the record that Wynn considered

herself to be precluded from performing work because of sitting limitations.  Other than rotating between various sitting *locations* and leaning to the left, Wynn did not testify at the hearing that she was limited in her *ability* to sit.  She reported no sitting limitations in her November 2021 Function Report, and she had no relevant complaints in May 2022.  And despite an isolated complaint of relevant pain in January 2022, she nevertheless exhibited no issues or limitations with sitting or getting on and off an examination table during her exam at that time.  An ALJ is not under an obligation to investigate a claim that is not offered at the time of application for benefits and not offered at the hearing as a basis for disability.  *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (citing *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)).

Moreover, any error in the ALJ's failure to specifically address Wynn's ability to sit is harmless at most.  Even if the ALJ found that Wynn's testimony of needing to rotate her sitting position every ten to fifteen minutes was consistent with other evidence of record, the VE testified that the jobs that Wynn could perform with her RFC – that is, addresser, sorter, and document preparer – all had a sit-stand option where the worker could alternate between sitting and standing as needed.  (Tr. 55-56.)  Thus, even with her asserted sitting limitation, Wynn could nevertheless perform the work that the VE identified and the ALJ credited.  *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) ("the deficiency does not require

- 11 -

reversal since it had no bearing on the outcome.").

I cannot say the same, however, regarding the ALJ's treatment of Wynn's assertion that she needs a cane for walking and to provide stability when standing. Although the ALJ noted Wynn's testimony that she uses a cane for walking and balance because of leg pain and that both consultative examiners observed in January 2022 that she used a cane (Tr. 26, 27, 30), that is where his acknowledgement of Wynn's cane use ends. He neither credits nor discredits Wynn's subjective assertion that she needs a cane, nor does he cite any evidence of record upon which he could made such an assessment, despite there being some. (*E.g.*, Tr. 374, 395 – wheeled walker prescribed upon hospital discharge; Tr. 938 – uses cane at CE, severe limp, difficulty walking; Tr. 951 – ER visit for chest pain, no other complaints, no note of cane use.) The ALJ wholly fails to address whether Wynn's asserted cane use is consistent with the evidence of record and the extent to which it affects her ability to engage in work-related functions if it indeed does. *See Noerper v. Saul*, 964 F.3d 738, 747 (8th Cir. 2020) (unable to determine permissibility of RFC determination in the absence of evidence translating the medical evidence and subjective complaints into functional limitations). Unlike Wynn's claim regarding her sitting limitations, Wynn offered her cane use as a basis for disability in her Function Report when she applied for benefits and at the hearing. (*See* Tr. 47-48, 202, 208.)

- 12 -

I also cannot find that the ALJ's failure to assess Wynn's cane use was harmless error.  At the hearing, the VE testified that the identified jobs could not be performed if the individual needed to have one hand on a cane while standing given that the work required the use of both upper extremities.  (Tr. 56.)  A determination as to whether Wynn must use a cane for walking and standing as she claims is necessary to a determination as to whether she can perform the jobs identified by the VE and credited by the ALJ.  Remand is necessary for such a determination.

Accordingly,

**IT IS HEREBY ORDERED** the Clerk of Court shall update the docket sheet to reflect the correct spelling of plaintiff's name, that is, "Brittney J. Wynn."

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **REVERSED** under sentence four of 42 U.S.C. § 405(g), and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum and Order.

A separate Judgment is entered herewith.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 5th day of December, 2024.